and we'll move now to case number six Kevin Clanton v. United States. Mr. Himmelfarb. Mr. Himmelfarb. Yes, thank you, Your Honor. May it please the court, Edward Himmelfarb with the Department of Justice. We're back here for a second appeal in this medical malpractice case because the district court committed legal errors in responding to this court's remand directions from the first appeal and as a result of those legal errors the district court reinstated its conclusion from its vacated opinion that Mr. Clanton was zero percent contributory negligent even though he repeatedly failed to follow clear and simple medical instructions to protect his own health. Here the provider's instructions were as simple as they can be. Take your medications and come back in a week. Mr. Clanton did neither. When he flunked his first deployment physical in June 2008, Nurse Jordan treated him and told him to return in a week. He didn't return for more than two years. A couple of months after his first visit, that is in August 2008, Mr. Clanton went to the emergency room on his own with what he called the worst headache of my life. He was treated there and the emergency room medical personnel told him follow up with your days. He didn't do that either even though he had taken no medication and taken his medications in the previous two and a half months. When he flunked his second employment physical two years later he finally returned to Nurse Jordan but he hadn't taken any medications during that whole period. There is no Illinois case law, certainly none cited by the district court or by Mr. Clanton here, that supports the notion that the patient who disregards his provider's advice is 0% contributorily negligent unless the provider first educates the patient in detail about his condition, the potential harms that can befall someone with this condition, and the need to follow medical advice in the first place. Now if you look at the Fort Chalebo case, which is a district court case from the Northern District of Illinois under Illinois law, it's a Federal Tort Claims Act case, that's a good counterexample. There the inmate had a seizure disorder and stopped taking his Dilantin. The prison medical staff failed to explain to the inmate why it was dangerous to stop taking his Dilantin and yet after the after the inmate died for failing because he failed to take his Dilantin and had a seizure disorder, the district court held that the inmate was 33% contributorily negligent for not taking it despite not being given adequate information. Now I mentioned at the outset that the district court made several legal errors, we go through those in our brief, and maybe a good idea just for me to at least to talk about the primary legal error. In its first opinion, the opinion in the first appeal, this court said the case would be remanded so that the district court could do the objective reasonable person analysis under Illinois law, and the court said Clanton was in the position of a person whose caregiver had failed to provide information about the severity of his condition, but there was actually a second, I'm not quoting anymore, there was a second aspect to Mr. Clanton's position that the district court was supposed to take into account on remand. And that second thing from this court's opinion, yet he also had a few external clues that he was seriously unwell. For example, two employment related physicals show that he had dangerously high blood pressure. So the case goes back to the district court. The district court says, you know what, the Court of Inquisition had any clues, external clues that he was seriously unwell, and it did not take that into account when it did its analysis. So that's the basic problem here. And just to be clear about this, if you look at page 7 of the district court's opinion on remand, I'll quote the sentence there, that exam, meaning the one in June 2008, did not suggest any other medical problems, certainly nothing that would have told him he was seriously unwell, and that contradicts what this court said in its first opinion. And again, just in case there was any question with the district court, what the district court's thinking was on this, on page 8, it said, the court respectfully disagrees with Clanton that he, I'm sorry, the court respectfully disagrees that Clanton should have known he was seriously unwell based on the high blood pressure reading and two work physicals two years apart. Those are the precise examples that this court gave in its opinion in the first, in the first appeal, and the district court on remand rejected those statements, and therefore didn't do the appropriate analysis on remand. Now we can go on from there, but that's basically it. The district court did not do what this court directed it to do, and as a result, it came up with the same conclusion in his first opinion that Mr. Clanton was 0% contributory negligent. It cited no case law from Illinois that even suggested as much, and it made rather trivial distinctions of the various cases that the government introduced from Illinois case law that show that if you, if a patient fails to file, to follow the medical providers advice, the patient can be held contributory negligent. The second case I would just suggest that the court could take a look at is called Pantaleo, and we cited that in our opening brief. I believe it's page, the what's interesting about that case, that's an Illinois case, and that in that case, uh, the, uh, the father took his 17 year old son to the emergency room. The son had, uh, it turned out son had an infection. He had a wound in his hand. The medical provider at the E. R. Completely failed to diagnose that did not do a workup of the of the possibility of infection and simply told the father, bring him back. If the pain gets worse, the father brought that that was, by the way, that was on a Friday. The following Monday, after that two day weekend following Monday, they brought him back to the emergency room. Basically, it was too late. At that point, the son died. And when the death portion of the case, the parents wrongful death portion held that there were no damages because the parents were contributory negligent for failing to follow the negligent E. R. Doctors advice to come back over the weekend, not just, you know, uh, sometime in the next week over the weekend. So I think between those two cases, you have a pretty good idea of what Illinois law supports and what it doesn't support. Um, the court itself had no, um, offered no case law to the contrary. And I think that as a result of that, this court should once again vacate and send the case back to the district court. And, of course, no questions. I'd like to reserve the balance of my time. Thank you, Council. Mr Talkin, Mr Talkin. Also, would you address in the judge Barrett's initial opinion in this case? Uh, the line that says we agree with the government that the court erred in its analysis of comparative negligence. Certainly, Your Honor. And please, the court, Mr Himmelfarb and your honors. My name is Falcon. I'm here for the appellee, Mr Kevin Clayton and your honor. I want to make sure I have your question. Would I address that the Seventh Circuit, the appellate court's finding that it believes the district court on the original appear erred in its comparative fault analysis? Yes, that's on first paragraph of the opinion. Yes, you're right. And I'm familiar with what they said. I believe that may be reading their opinion in contact. I think is we remember the of the three judges on this panel were involved in this original appeal. Now, I'm sorry. The author of the original opinion is now going on to greater, better and greater things on the Supreme Court. Absolutely. I'm aware. And so there's no question the this finding or this holding appears. The court believes that the district court on the first go around in the first appeal. It wasn't clear. They basically they said they weren't convinced that the district court applied the reasonable person standard and then remanded it back with clear instructions to apply the reasonable persons. And there were no allegations that the district court's ultimate conclusion in the first deal was wrong, that Mr Clinton's behavior was in fact unreasonable or that wasn't an issue. It was simply the government claimed. She didn't tell us what standard she applied. It's unclear. The government believed she didn't apply the right standard. We as the point of view, she did. And this court, the Seventh Circuit then made the finding they weren't convinced she applied the right standard. Go back in the standard. But they talked about comparative negatives, not just the reasonable standard of a reasonable person. All right. Well, they certainly use those words, Your Honor. But that is not that was not the analysis of performed. There was no deep dive into whether or not the decision that Mr Clinton acted reasonably or was not negligent was right or wrong. It was simply limited. It was a 30,000 ft view of whether or not she applied the appropriate standard to assess fault. It was determined it wasn't clear or this court wasn't convinced she had, and they simply then sent it back for her to to redo it. And I think there's no question she considered Mr Clinton's subjective standing in the first opinion, and she was instructed and mandated to go ahead and analyze what Mr Clinton or what a reasonable person would know and do in Mr Clinton's position, compare their behavior and then make her assess the full which our position is. Clearly, she has done now on this second round. Certainly, the district judge did refer to, uh, careful, reasonably careful person in her opinion. Okay. And Your Honor, if I mean, if that answers your question, I'd like to. I do want to point something out at the sort of the beginning of my time. What is important here, I think, keep in focus is what the government appeal about is about whether or not the court applied the reasonable person. And if if the court determines this court determines the district court applied the reasonable person standard, the government appeal should fail. The court should affirm the judgment in this litigation should end. Finally, this case is not about whether or not Mr Clinton's behavior was actually reasonable or not. The case isn't about as pled by the government on appeal, not about whether the district court got her finding a fault 0% fault right or wrong. Clearly, the government's unhappy with that finding, and they think that Mr Clinton's behavior was unreasonable. And Mr Himmelfarb spent the first I kind of three or four minutes of his of his eight minutes of time or his 10 minutes of time telling you facts and make it sound like Mr Clinton acted unreasonable. And that's not the issue here. But what they're doing is trying to flood this court with facts that taken in isolation each in or out of context sound on their face like Mr Clinton acted unreason. And taken in isolation, some of these facts do sound unreasonable. And when they want, the government wants this court to believe district court's ultimate conclusion. Finding a fact of 0% fault is wrong, and they want you to undo district court. But the problem is, that is not the appeal that the government filed. The government is not a pro se litigant that's unskilled in appeal work. Mr Mr Himmelfarb does this far more often than I government knew they were doing. They made the only issue on appeal, whether or not the court applied the person's. They could have challenged the findings of no fault directly. They could have taken him head on, but they chose not to, and they chose not because it's a strategic choice. They knew they would have a hard time, and they should have a hard time overcoming the high hurdle standard review for clear air. So what the government is doing here is trying to get this court to believe Mr Clinton was unreasonable. And what they're doing is cloaking their challenge, the ultimate finding in a claim that court used the wrong standard. And what they're trying to do is to get this court to give it a overview of a factual finding, and we know that's not proper. And ultimately, whether or not the parties agree with the government or with the trial court's finding of fact doesn't matter whether this court believes with all due respect, whether this belief or believe she got it right or wrong doesn't matter based on the appeal as filed by the only thing that matters is that we look at what analysis the court used to reach her decision that Mr Clinton acted reasonably or that he's not at fault. And there's no question when we pick up her opinion and read it in black and white, she tells us what she's gonna do, and she goes ahead and does. She acknowledges this court clear mandate to apply the reasonable person standard, and then she recites the opinion. He tells us the task before her is. This is it. Appendix three, a three of her opinion that I'm reading from. Thus, the court must analyze what a reasonably careful person would have done or not done at that reasonably careful person found himself circumstances similar to heaven plan. She tells us what she's gonna do, what she's supposed to do, and then she doesn't. And we could walk through. I'm happy to walk you through the opinion, but I know you've read it. You understand that she made civic findings that are common knowledge about what a reasonable person would know about hypertension and how they would behave in light of that common knowledge. She considered the she considered the specific circumstances that might be external clues to Mr Clinton or to a reasonable person that he was seriously unwell. She considered the 2000 and eight work physical are the tooth to failed work 2008 er visit. He considered all of the things that the government pointed to that they say would make Mr Clinton shape up or that he should have known better and acted different. The court walked through those and made specific detailed findings about what a reasonable person would know from those circumstances and what they would do in light of the circuit she supposed to do under the reasonable person standard. She compared Mr Clinton's behavior to that of what the reasonable person would do and made her conclusion that Mr Clinton or that a reasonable person out of acted any differently than Mr Clinton under these circumstances or in other words, Mr Clinton's conduct was reasonable. Therefore, he's not it. If this isn't reasonable person analysis as the government claims it isn't, I don't know how you would do it. He has walked us through the extra steps that this work for her to do to analyze what a reasonable person would do in Mr Clinton's circumstances and compare their behavior. She did it in black and white. We can read it and see it. It is what it is. Luckily, and I know I've been going on and on. Another point I do want to make, uh, Mr Himmelfarb suggested this court, the Seventh Circuit during their first appeal has made a finding of fact that a reasonable person would know they were Mr Himmelfarb, I believe, is hosting what the court actually said in its opinion. What the court is giving his instruction to the district court how you need to do the reasonable person. And now there are some clues that Mr Clinton had that he was seriously unwell. There's no question he was seriously unwell, and there were things clues out there that would indicate that he was seriously unwell. The question is, should Mr Clinton have understood that he was seriously unwell from these clues? And would a reasonable person know that they were seriously unwell from these clues? And the court walked through in detail as to why Mr Clinton didn't know, but also why a reasonable person wouldn't know, given the certain and did the appropriate analysis because the government is unhappy with the ultimate finding of fact does not mean the district court used the wrong standard or the wrong analysis to reach your conclusion. I see more time. I'll give you two more minutes because you could have two more minutes to your argument if you thank you, Your Honor. And I'd like that. I'd love to have it. I'd like to point out one other thing. So if the government's position in this case around this appeal is right, their position is that the district court relied on either a subjective understanding of Mr Clinton or some new novel per se rule that a plaintiff can't be negligent unless fully advised by their provider. The risks of the treatment court didn't come close to making some new or novel assertion that unless you're fully educated by your provider, you can't go again. The court didn't do anything of the sort. If she had the opinion would have been about three pages long because we know they're Jordan failed to provide any education to Mr. But the analysis did considering the other potential sources of information and a reasonable person such as the failed work physicals, the 2000 80 our visit considering those shows that this court realizes that even though nurse Jordan didn't educate Mr Clinton, he could still be negligent. His conduct could still be unreasonable because there's other factors, other circumstances, other external clues that could have told him or the reasonable person that I have a problem. I need to change my behavior. And so she analyzed all those other conditions, all of those circumstances in her asses and made her conclusion. And then finally, whether if the government is right, think about what that means. That means that the district court judge in our case, who is the chief judge of the didn't apply the reasonable person standard and put in the words what she was going to sprinkled in findings and specific analysis about what a regional person would do. But in reality, government claiming that's not what she did. That means not only is the chief judge of the southern district, it means that not only is she blatantly ignoring the clear mandate by the standard, what she's trying to do is trip us and mislead us into thinking she did something that she didn't do to basically work a fraud on the parties and potentially this court by making it look like she applied the reasonable persons when really she did. And that scenario makes no sense. That is not what happened. What happened here is the judge did what she was told to do by this court in her analysis on paper, showed her work, made her findings, did the comparison and then made it reached her conclusion and simply being unhappy with the ultimate conclusion does not mean she didn't do the appropriate analysis. And thank you, Your Honor, for the additional time. Thank you. Mr Hemel Farber, you have additional two minutes as well. Okay, thank you. I hope not to need it. I just want to go back briefly to what this court said about what the district court was supposed to do on remand. There were two aspects of a reasonable person in Mr. Clanton's position, two aspects of his position. The first aspect we all know about the provider didn't inform him about the severity of his condition. We know about that. That's what the court said. The court went on to say he also had a few external clues that he was seriously unwell. For example, two employment related physicals showed that he had dangerously high blood pressure. That's what this court said. That's what the court said. And so when the district court is supposed to do is to go back and look at what a reasonable person with those two factors, the lack of education and the few external clues. And what the district court said here is no, he didn't have a few external clues. What this court said, the Seventh Circuit said, were his external clues. I disagree with that. So the district court was not doing what this court directed it to do and is basically not complying with this court's instructions. Uh, and, you know, obviously has an interest in this case because of the money involved. And, you know, because the court's decision on contributory negligence affects the amount of money we were paying Mr Clanton. But I also want to point out that the court has an institutional interest in us making sure that when it issues an opinion and issues directions on a remand, that those directions are followed. And if the court has no questions, uh, if the court has any questions, I'd be happy to try to answer them. Otherwise, I'm finished. All right. Thanks to both counsel and the case will be taken under advice. And we'll be in recess. Thank you.